IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**


Civil Action No. 08-cv-00205-PAB-BNB

LESLIE ROUSSEAU,

     Plaintiff,

v.

BANK OF NEW YORK,
BRYAN S. BLUM, Registration No. 34949, and
THE LAW FIRM OF CASTLE MEINHOLD & STAWIARSKI, LLC,

     Defendants.
_____

**ORDER REGARDING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**
_____

     This matter is before the Court on defendants Bryan S. Blum and Castle

Meinhold & Stawiarski, LLC's motion to dismiss [Docket No. 20] and defendant Bank of

New York's motion to dismiss or in the alternative motion for summary judgment

[Docket No. 30].  These motions seek dismissal of plaintiff Leslie Rousseau's case,

which arises from defendants' alleged misconduct during the foreclosure of plaintiff's

home.  Both motions were referred to Magistrate Judge Boyd N. Boland [Docket Nos.

24, 32].  On February 24, 2009, Magistrate Judge Boland issued a Recommendation of

United States Magistrate Judge [Docket No. 48] recommending plaintiff's claims be

dismissed.  Plaintiff timely filed a partial objection [Docket No. 49] contesting only the

recommended dismissal of the claim for violation of the Fair Debt Collection Practices

Act ("FDCPA").  Having reviewed the objected-to portion de novo, I find that plaintiff's FDCPA claim survives defendants' motions to dismiss.

## I.  BACKGROUND

The relevant facts, save for one, are not in serious dispute.  In February 2000, plaintiff borrowed about $200,000 to purchase a home in Aurora, Colorado.  Compl. [Docket No. 3] ¶¶ 13-14; Defs. Bryan S. Blum and Castle Meinhold & Stawiarski, LLC's Mtn. to Dismiss [Docket No. 20] ("Blum MTD") at 1; Def. Bank of New York's Mtn. to Dismiss [Docket No. 30] ("BNY MTD") at 2.  In September 2006, apparently after plaintiff failed to make several payments, defendants began foreclosure proceedings on the home.  Compl. ¶ 16; Blum MTD at 1; BNY MTD at 1.  More specifically, defendant Bryan S. Blum ("Blum") and his law firm, defendant Castle Meinhold & Stawiarski, LLC ("Castle"), initiated the foreclosure on behalf of defendant Bank of New York ("BNY"). See Compl. ¶ 16.  In late October 2007, the property was sold at a public trustee sale. Blum MTD at 2; BNY MTD at 3.  On November 18, 2007, the Arapahoe County district court entered an order approving the sale.  See Rec. of U.S. Mag. Judge [Docket No. 48] at 6.

After the foreclosure sale was final, plaintiff, acting pro se, filed a complaint in this court against BNY, Blum, and Castle.[1]  The litigation centers on defendants' right to foreclose.  Plaintiff argues vigorously that defendants were not the proper owners of the debt, while defendants claim that plaintiff's note was rightly assigned to them by

---

[1]  Plaintiff's complaint also named the Arapahoe County public trustee as a defendant.  However, the public trustee was dismissed early in the proceedings.  See Docket Nos. 6, 31.

plaintiff's lender.  *See* Compl. ¶¶ 20-21; Blum MTD at 11; BNY MTD at 3.  In essence,

plaintiff alleges that by representing that they owned a debt that they did not,

defendants violated the FDCPA. *See, e.g.*, *id.* ¶¶ 17-21, 51-54.  Plaintiff seeks

damages under the FDCPA, statutory damages under the Equal Access to Justice Act

("EAJA"), 28 U.S.C. § 2412, and a declaration that the state foreclosure was "invalid

and unlawful." *Id.* at 11-12.

Defendants filed two motions to dismiss – one by BNY and the other by Blum

and Castle.[2]   Both make the same primary argument: plaintiff's claims attack the state

court's order approving the foreclosure sale and thus are barred by the *Rooker-*

*Feldman* doctrine, which prohibits appellate review of state court decisions in the lower

federal courts.  Blum MTD at 5-7; BNY MTD at 6-9.  The magistrate judge construed

plaintiff's complaint to raise three specific claims: (1) declaratory relief to void the state

foreclosure action; (2) violation of the FDCPA; and (3) violation of the EAJA.  Rec. at 6-

9.  As the declaratory judgment claim specifically challenged the propriety of the state

court decision, the magistrate judge recommended dismissal under *Rooker-Feldman*.

*Id.* at 6-8.  The magistrate judge similarly recommended dismissal of the FDCPA claim,

finding that it was premised on the contention that defendants did not own plaintiff's

debt – a predicate fact in the state court foreclosure action – and thus a ruling in

plaintiff's favor would be a finding that the state court decision permitting foreclosure

[2]  Defendant BNY's motion is styled "Motion to Dismiss or in the Alternative for Summary Judgment."  However, it is not clear what portion of the brief is intended to present a summary judgment argument.  Moreover, the brief appears to focus on the alleged deficiencies in plaintiff's pleadings.  For these reasons, I will treat defendant BNY's motion as a motion to dismiss.  This ruling is without prejudice to BNY later filing a motion for summary judgment.

was wrong. *Id.* at 8-9. Finally, the magistrate judge recommended dismissal of the EAJA claim, noting that plaintiff had conceded to dropping the claim. *Id.* at 9.

Less than ten business days after the magistrate judge issued his recommendation, plaintiff filed a "Reply Brief to Judge's Decision to Dismiss," taking issue with the recommendation to dismiss the FDCPA claim. *See* Reply Br. to Judge's Decision to Dismiss [Docket No. 49]. Both defendants construe this as an objection to the recommendation, and I do as well. *See* Fed. R. Civ. P. 72(b)(2) (plaintiff has ten days to file specific written objections to the recommendation). I consider plaintiff's objection below.

## II.  ANALYSIS

### A.  Standard of Review

Plaintiff does not object to the magistrate judge's recommended dismissal of the declaratory judgment or EAJA claim. In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings"). I have reviewed these recommendations to satisfy myself that there is "no clear error on the face of the record."[3]  *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes. Based on

---

[3]  This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

this review, I have concluded that these recommendations are a correct application of the facts and the law.  I therefore affirm the magistrate judge's recommendation to dismiss these claims.

Plaintiff does, however, object to the recommended dismissal of the FDCPA claim.  Where, as here, a party files timely objections to a magistrate judge's recommended disposition of a dispositive motion, a district court reviews the objected-to portion of the recommendation de novo.  Fed. R. Civ. P. 72(b).

As noted by the magistrate judge, defendants have mounted a factual jurisdictional attack on the complaint pursuant to Fed. R. Civ. P. 12(b)(1).  Thus, I may consider matters outside the pleadings in order to determine whether the Court has subject matter jurisdiction over this case. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995).  Here, I have specifically considered the relevant facts contained in the pleadings and orders in the state court foreclosure action.

Defendants also challenge plaintiff's claim under Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted.  For a complaint to state a claim it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2).  Rule 8(a)'s "short and plain statement" mandate requires that a plaintiff allege enough factual matter that, taken as true, makes his "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson*, 534 F.3d at 1286.  In considering a plaintiff's claims,

the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Finally, because plaintiff is proceeding pro se, I construe her pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

### B.  Violation of Fair Debt Collection Practices Act

In addition to their *Rooker-Feldman* argument, defendants Blum and Castle advanced three other grounds for dismissal of plaintiff's FDCPA claim: the claim is barred by *res judicata*; the claim was filed outside of the statute of limitations; and the claim is facially implausible.  Blum MTD at 8-13.   Defendant BNY also asserted an additional ground for dismissal, arguing that a mortgage foreclosure action does not come within the scope of the FDCPA.  BNY MTD at 10-11.

As explained below, *Rooker-Feldman* does not bar plaintiff's claim.  Because the magistrate judge recommended dismissal on *Rooker-Feldman* grounds, he did not address defendants' other arguments.  In the interest of judicial economy, I consider those issues here and conclude that they fare no better than the *Rooker-Feldman* argument.  At this stage of the proceedings, plaintiff has plausibly asserted an FDCPA claim.

### 1.  Rooker-Feldman

The *Rooker-Feldman* doctrine, derived from the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "prohibits federal suits that amount to

appeals of state-court judgments." *Bolden v. City of Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006). The doctrine is grounded in Congress' grant of appellate jurisdiction to review state court decisions exclusively to the Supreme Court. As such, a claim inviting a federal district court to review and reverse an unfavorable state court decision is outside of a lower federal court's jurisdiction. *See, e.g.*, *Rooker*, 263 U.S. at 416.

Unlike plaintiff's declaratory relief claim, which expressly sought to void the state court foreclosure order, plaintiff's FDCPA claim is not a direct attack on the state court decision. Therefore, defendants' argument rests on the principle, announced in the *Feldman* case itself, that federal claims that are "inextricably intertwined" with the state court judgment fall within the scope of *Rooker-Feldman*. *Feldman*, 460 U.S. at 482 n.16. Many courts read this principle expansively, finding federal claims barred anytime they "succeed[ ] only to the extent that the state court wrongly decided the issues before it." *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (quotations omitted). Given this understanding of the doctrine, plaintiff's FDCPA claim would seem to be precluded. As the magistrate judge correctly noted, in order to find that defendants violated the FDCPA, the Court would have to find that they did not own the debt they collected on. This holding would conflict with the state court's approval of the foreclosure, which necessarily assumed defendants had the power to foreclose.

However, the Tenth Circuit's decision in *Bolden* makes clear that the reach of the doctrine is not so broad. After losing a state court injunction to prevent the demolition of his property, plaintiff sued the city of Topeka, Kansas in federal court, asserting discrimination and civil rights claims. 441 F.3d at 1131. The district court dismissed

certain claims on the ground that they were "inextricably intertwined" with the state court

case he had lost, relying on the same theory defendants advance here – that plaintiff

"could succeed only to the extent that the state court wrongly decided" his claims.  *Id.* at

1143.  The Tenth Circuit reversed.  Acknowledging the confusion surrounding both

*Rooker-Feldman* generally and the "inextricably intertwined" principle specifically, the

court engaged in a thorough review of the doctrine and concluded that, where a plaintiff

is not attacking the state court judgment itself, the doctrine does not apply.  *Id.* at 1139.

The Tenth Circuit summarized its analysis as follows:

> [T]he Rooker-Feldman doctrine "is confined to cases of the kind from
> which the doctrine acquired its name: cases brought by state-court losers
> complaining of injuries caused by state-court judgments rendered before
> the district court proceedings commenced and inviting district court review
> and rejection of those judgments." [*Exxon Mobil Corp. v. Saudi Basic
> Indus. Corp.*, 544 U.S. 280, 284 (2005)].  The doctrine "does not
> otherwise override or supplant preclusion doctrine."  *Id.* [ ].  In particular,
> the statute granting the Supreme Court appellate jurisdiction over
> state-court judgments, 28 U.S.C. § 1257, does not "stop a district court
> from exercising subject-matter jurisdiction simply because a party
> attempts to litigate in federal court a matter previously litigated in state
> court.  If a federal plaintiff presents some independent claim, *albeit one
> that denies a legal conclusion that a state court has reached* in a case to
> which he was a party, then there is jurisdiction and state law determines
> whether the defendant prevails under principles of preclusion."  *Id.* at
> [293].

*Id.* at 1142-43 (emphasis in Tenth Circuit decision).  The *Bolden* court recognized that

this latter "independent claim" principle

> undermines the district court's ruling in this case that *Rooker-Feldman*
> barred certain of Mr. Bolden's claims because they "could succeed only to
> the extent that the state court wrongly decided that [he] did not qualify for
> funding." . . .  Appellate review – the type of judicial action barred by
> *Rooker-Feldman* – consists of a review of the proceedings already
> conducted by the "lower" tribunal to determine whether it reached its result
> in accordance with law.  When, in contrast, the second court tries a matter

anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.

*Id.* at 1143.

*Bolden* controls here.  Plaintiff alleges that defendants' conduct – falsely representing that they owned the debt – violated the FDCPA.  While a ruling in plaintiff's favor may be contrary to the state court's allowance of the foreclosure, the FDCPA claim does not actually seek to have the state court decision overturned.  Indeed, plaintiff's claim is not at all dependent on the state court's approval of the foreclosure; as pled, it was the misrepresentations *leading up to* the foreclosure that violated the Act.  *See* Compl. ¶¶ 16-21.  "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment."  *Id.* at 1145.  Plaintiff does not attack the judgment itself, and therefore *Rooker-Feldman* does not deprive this Court of jurisdiction to hear the claim.

### 2. *Preclusion*

As noted in *Bolden*, a plaintiff who brings a claim related to, but not directly attacking, state court proceedings may still face preclusion problems.  *Id.* at 1143.  Defendants Blum and Castle make precisely that argument, asserting that plaintiff's challenge to defendants' ownership of the debt was litigated in the state court foreclosure action and therefore cannot be retried here.  Blum MTD at 8-10.  Two related doctrines operate to prevent repetitive litigation: claim preclusion and issue

preclusion.  *Park Lake Resources Ltd. Liability v. U.S. Dep't of Ag.*, 378 F.3d 1132,

1135 (10th Cir. 2004).  Though the doctrines operate in slightly different ways, both

require that the earlier judgment invoked to preclude the later case be "final."  *Id.* at

1136 (claim preclusion requires "a final judgment on the merits"; issue preclusion

requires that "the prior action has been finally adjudicated on the merits.").  Defendants

argue that "there is no question that the state foreclosure was final."  Blum MTD at 9.  I

disagree.

Defendants sought to foreclose on plaintiff's home pursuant to Colorado Rule of

Civil Procedure 120, which provides that a person seeking to foreclose on and sell

property must seek a court order to do so.  After defendants filed a motion for an order

authorizing sale, plaintiff filed a motion to dismiss, arguing that "[t]he Bank of New York

is not the recorded owner of the debt."  Blum MTD, Ex. 6.[4]  Plaintiff's motion was

stamped "DENIED" on January 3, 2007 by the state district court judge.  *Id.*  The

question is whether this denial was a "final" order with preclusive effect.

Preclusion does not operate as a bar to future claims where "'the party against

whom preclusion is sought could not, as a matter of law, have obtained review of the

judgment in the initial action.'" *In re C&M Prop., L.L.C.*, 563 F.3d 1156, 1166 (10th Cir.

2009) (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006)); *see also*

*Standefer v. United States*, 447 U.S. 10, 23 (1980) ("[C]ontemporary principles of

collateral estoppel . . . strongly militat[e] against giving an [unreviewable judgment]

---

[4]  By referencing public records from the prior state court proceeding, I do not
convert defendants' motion from a motion to dismiss into one for summary judgment.
Rather, I am permitted to consider facts subject to judicial notice in ruling on a motion to
dismiss.  *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

preclusive effect" (citing Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 3,

1976))).  By its terms, an order denying or authorizing a motion for sale under Rule 120

is not an appealable judgment.  C.R.C.P. 120(d) ("Neither the granting nor the denial of

a motion under this Rule shall constitute an appealable order or judgment.").

The rule does not expressly speak to whether an order denying a motion *to

dismiss* the motion for sale is similarly unappealable, and I have found no decisions

addressing that issue.  However, typically, denials of motions to dismiss are

interlocutory orders not subject to immediate appeal.  *See, e.g.*, *Awad v. Breeze*, 129

P.3d 1039, 1045 (Colo. App. 2005).  In Colorado, "appellate courts may not review

interlocutory orders without specific authorization by statute or rule."  *Scott v. Scott*, 136

P.3d 892, 897 (Colo. 2006).  Defendants do not cite to any such statute or rule

suggesting the denial of plaintiff's motion was appealable.

Moreover, the text of Rule 120 seems to contemplate that a plaintiff could re-

raise arguments concerning the validity of the foreclosure in a subsequent proceeding.

The rule expressly provides that the court's order approving the sale is "without

prejudice to the right of any person aggrieved to seek injunctive or other relief in any

court of competent jurisdiction."  C.R.C.P. 120(d); *see also United Guar. Residential

Insurance Co. v. Vanderlaan*, 819 P.2d 1103, 1105 (Colo. App. 1991) (plaintiff's failure

to raise a defense to deficiency in a Rule 120 proceeding did not preclude later

challenge; "[P]roceedings pursuant to C.R.C.P. 120 are not adversarial in nature, are

not final, and generally no appeal may be taken to review the resulting orders. . . .

Accordingly, since no final judgment was entered, neither the principles of *res

-11-

*judicata* nor collateral estoppel bars the defense." (citations omitted)).  For these reasons, defendants have not shown that the denial of plaintiff's motion in the state court proceedings was sufficiently "final" to permit invocation of the preclusion doctrines.

### 3.  Statute of Limitations

Defendants Blum and Castle also assert that plaintiff's FDCPA claim is barred by the statute of limitations.  Blum MTD at 12-13.  FDCPA claims must be brought within a year of the alleged violation.  *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002).  Plaintiff's complaint was filed in January 2008, and thus violations occurring more than a year prior would be time-barred.  *See id.* (analyzing each alleged act for timeliness).  Although plaintiff's pro se complaint is not particularly specific in terms of dates of violations, the complaint does allege that "[d]uring the weeks and months prior to *and after* September 28, 2006 [the date on which the foreclosure proceedings allegedly began] the Plaintiff received phone calls and mail correspondence from representatives, employees and/or agents of [defendants] who were attempting to collect on the debt."  Compl. ¶ 17 (emphasis added).  Moreover, the complaint alleges that "[d]uring 'communications' in the weeks and months prior to and after July 3, 2007, representatives and/or agents of the Defendants attempting to collect the debt, repeatedly falsely represented . . . the legal basis and grounds upon which its action to collect this debt was based."  Particularly in light of the leeway afforded pro se plaintiffs, the Court construes the complaint to assert violations occurring within the one-year limitations period.  If discovery shows that, in fact, all of the allegedly bad conduct

occurred outside of this period, defendants are of course free to move for summary judgment on that ground.

### 4. Plausibility

Defendants Blum and Castle's final argument is that it is "implausible in the extreme" that BNY did not have the right to foreclose on plaintiff's property.  Blum MTD at 10-12.  Defendants specifically attach to their motion plaintiff's amended and restated note.  While the note appears originally to have been between plaintiff and Countrywide Home Loans, Inc., the note bears the following stamp: "PAY TO THE ORDER OF Bank of New York as Trustee for Certificateholders CWABS II, Inc., Lft 2005-04, WITHOUT RECOURSE, COUNTRYWIDE HOME LOANS, INC." *Id.* Ex. 10. This assignment, defendants contend, demonstrates BNY's legal right to foreclose.

Defendants argue that the Court may look to this document on a motion to dismiss, as plaintiff's complaint references the foreclosure proceedings.  However, a court may only look to documents outside of the complaint on a motion to dismiss if "the documents are central to the plaintiff's claim *and the parties do not dispute the documents' authenticity*."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (emphasis added).  Accepting that the note is "central," I cannot find that its authenticity is undisputed.  For example, in plaintiff's affidavit challenging BNY's motion to dismiss, she complains that BNY consistently refused to produce evidence of the assignment and asserts that "[t]he first time that Bank of New York produced my Amended & Restated Note *allegedly* assigned to them" was June 13, 2008, long after she first requested proof.  Corrected Pts and Auth. and Aff. of Leslie Rousseau [Docket

No. 47] ¶¶ 5-7 (emphasis added).  Fairly read, this is a challenge to the legitimacy of the note.  Defendants may be able to establish, on summary judgment, the authenticity and legality of the assignment.  But for purposes of a motion to dismiss, I cannot make that assumption.  Defendants' argument, which rests on the Court's substantive consideration of the note, therefore fails.

### 5.   Foreclosures under the FDCPA

Finally, citing to a series of district court cases, defendant BNY argues that plaintiff's claim "fails as a matter of law because the foreclosure of a mortgage or deed of trust to real property is not a 'debt collection' for the purposes of the FDCPA."  BNY MTD at 10.  The issue is not so clear cut.  Courts around the country have taken different positions on whether and when foreclosure activities are covered by the Act. *Compare Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (foreclosure activities constitute debt collection) *with Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (foreclosure activities not debt collection); *see also Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 887 (D. Minn. 2008) (noting split and citing cases).  The basic dispute is whether mortgage foreclosures constitute mere enforcement of a security interest by the lender, in which case they would appear to fall outside the scope of the Act, or whether foreclosures are an attempt to collect the underlying monetary debt, in which case they would fall within the scope of the Act.  15 U.S.C. § 1692a(5) (defining "debt" for purposes of FDCPA as an obligation "to pay money"); *see also Wilson*, 443 F.3d at 376 (rejecting argument that foreclosure is merely enforcement of a security interest and finding that actions

surrounding foreclosure were attempts to collect a "debt"); *Hulse*, 195 F. Supp. 2d at 1204 (taking contrary position and noting that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money").  BNY does not cite, nor has this Court found, any Tenth Circuit decisions addressing this question.  However, two principles relevant to the foreclosure issue do appear relatively settled, and those two principles preclude dismissal here.

First, even assuming that the FDCPA does not govern typical mortgage foreclosures because a foreclosure is an action on a security interest, the statute expands its reach to enforcers of security interests in one specific instance: where that party seeks to take property to which "there is no present right to possess[ ]."  15 U.S.C. § 1692f(6)(A); *see also id.* § 1692a(6) (defining debt collector as a person who is in the business of collecting debts owed or due, but noting that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests"); *Warren v. Countrywide Home Loans, Inc.*, No. 08-16171, 2009 WL 2477764, *2 (11th Cir. Aug. 14, 2009) ("[S]everal courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property, falls outside the ambit of the FDCPA *except for the provisions of section 1692f(6)*.") (quotations, alterations, citations omitted) (emphasis added); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 & n.3 (N.D. Ind. 2004) (noting that security enforcement activities fall outside the FDCPA, but also noting that section 1692f(6) is an exception to this rule and "applies to security enforcement actions").

Plaintiff expressly invokes section 1692f(6), alleging that defendants had no right to possess plaintiff's property because they were not the proper holders of the debt. *See* Compl. ¶¶ 19-21, 28. Under this provision, plaintiff's FDCPA claim is at least plausible.

Second, even the cases that reject FDCPA foreclosure claims recognize that, if a defendant seeks to collect money apart from the foreclosure process, such action would come within the bounds of the Act. For example, several recent decisions from courts in this circuit have noted the difference between cases involving non-judicial foreclosures, in which FDCPA claims are often disallowed, and cases involving judicial foreclosures, in which the claims are permitted. *See, e.g.*, *Maynard v. Cannon*, --- F. Supp. 2d ---, 2008 WL 2465466, *2-3 (D. Utah 2008); *McDaniel v. South & Assoc., P.C.*, 325 F. Supp. 2d 1210, 1216-18 (D. Kan. 2004). This distinction is based on the differing nature of each foreclosure procedure; "[i]n contrast to non-judicial foreclosures, which are intended only to enforce the lender's security interest and not to collect the underlying debt, a typical judicial foreclosure usually does involve seeking a personal judgment against the debtor for a deficiency and hence would likely amount to debt collection." *Fouché v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 786 (S.D. Miss. 2008); *see also Maynard*, 2008 WL 2465466 at *3 ("[J]udicial foreclosure cases against an individual property owner are distinguishable from a nonjudicial foreclosure against the property."). In other words, in contrast to a foreclosure that is only against the property, where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection. *See, e.g.*, *Kee v. R-G Crown Bank*, --- F. Supp. 2d ---, 2009 WL

2852350, *5 (D. Utah 2009) ("The Defendants have not acted outside of the procedures of a non-judicial foreclosure in this case and, therefore, are not collecting a debt under the FDCPA."); *Maynard*, 2008 WL 2465466, at *4 (FDCPA claim failed because "Defendant was not engaged to collect a debt from [the mortgagor], only to initiate a non-judicial foreclosure by enforcing the security interest"); *McDaniel*, 325 F. Supp. 2d at 1217 (noting the difference between "collecting money from a consumer as opposed to enforcing an interest in real property" and holding that, because defendant sought a judicial foreclosure, including a personal judgment against plaintiff, the FDCPA applied); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money."); *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 722 (N.D. W. Va. 1998) ("Since the trustees were not collecting on the debt [within the one-year statute of limitations] but merely foreclosing on the property pursuant to the deed of trust, [their] activities do not fall within the terms of the FDCPA.").

The foreclosure action here, which proceeded under Rule 120 of the Colorado Rules of Civil Procedure, appears to have been a non-judicial foreclosure. *Cf. Plymouth Capital Co. v. District Court of Elbert County*, 955 P.2d 1014, 1015 (Colo. 1998) (noting that Rule 120 is "an integral part of [Colorado's] streamlined, non-judicial foreclosure system"). However, plaintiff alleged that both prior to and after the initiation of the foreclosure, defendants corresponded with plaintiff in an "attempt[ ] to collect on *the debt*." Compl. ¶ 17 (emphasis added). This is, plausibly, an allegation that defendants persisted in monetary debt collection activities outside of the foreclosure

context.  If this allegation proves true, even those courts that hold a typical foreclosure action falls outside of the Act (because it is enforcement of security and not collection of money) would seem to permit a claim based on defendants' debt-collection activity. Thus, the Court need not decide at this stage whether a foreclosure is a debt collection, *Wilson*, 443 F.3d at 376, or not, *Hulse*, 195 F. Supp. 2d at 1204.  Plaintiff's allegations of attempts to "collect debt" during the process are sufficient to state a claim.

## III.   CONCLUSION

For the foregoing reasons, it is

ORDERED that the Recommendation of United States Magistrate Judge [Docket No. 48] is ACCEPTED in part and OVERRULED in part, as stated herein.  It is further

ORDERED that defendants Bryan S. Blum and Castle Meinhold & Stawiarski, LLC's motion to dismiss [Docket No. 20] and defendant Bank of New York's motion to dismiss or in the alternative motion for summary judgment [Docket No. 30] are GRANTED in part and DENIED in part.  Plaintiff's claims for declaratory judgment and violation of the Equal Access to Justice Act are DISMISSED.  Plaintiff's claim for violation of the Fair Debt Collection Practices Act is permitted to go forward at this point.


DATED September 29, 2009.

BY THE COURT:


s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge


-18-